**CONSOLIDATED CORK CORP.,**
**Appellant,**

**v.**

**The UNITED STATES, Appellee.**

**Customs Appeal No. 5386.**

United States Court of Customs
and Patent Appeals.

March 18, 1971.

Barnes, Richardson & Colburn, New York City, attorneys of record, for appellant. Joseph Schwartz, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, James Caffentzis, New York City, for the U. S.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and NICHOLS, Judge, United States Court of Claims, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision and judgment of the Customs Court, First Division,[1] overruling the importer's sev-

1. 63 Cust.Ct. 234, C.D. 3902, 323 F.Supp. 538 (1969). Familiarity with that opinion is presumed.

en consolidated protests to the collector's classification of certain granulated cork from Portugal under item 220.10, Tariff Schedules of the United States (TSUS) as cork, granulated or ground, weighing not over 6 pounds per cubic foot uncompressed. The importer contends that the merchandise weighs over 6 lbs./cu.ft. uncompressed and thus is properly classified and dutied under item 220.15 TSUS as "other" granulated cork.[2]

The following background information will facilitate an understanding of the issue involved. It appears from the record that prescreened and sized cork particles, termed "cork waste" by a deposition witness and having a density of less than 6 lbs./cu.ft., are compressed under hydraulic pressure in baling machines and bound with wire and burlap in Portugal for shipment to the United States. The resultant baled cork has a density of 10-11 lbs./cu.ft., and effects a saving on shipping and handling charges. A witness for the importer testified that, on arrival in appellant's warehouse, certain of the bales were unwrapped, and the "very hard, tough," coalesced cork in the bales was broken apart with an axe and smashed into small pieces. Those pieces or particles were poured into a drum of known volume and weighed within 20 minutes of breaking the baling wire. All cork so tested had a density greater than 6 lbs./cu.ft., ranging from 6.3 to 7.0, thus evincing a degree of decompression from its baled state. Once freed of its wire and burlap restraints and broken into small pieces, further decompression and expansion of the particles, with concomitant decrease in density, takes place over a period of time at a "logarithmic decay" rate—at the end of 24 hours, the density drops to about 5.9 lbs./cu.ft.; after a week, the density is about 5.6 lbs./cu.ft.;[3] and there is testimony

2. The pertinent TSUS provisions are:

Classified under:
  Schedule 2, Part 2, Subpart A:
    Cork, granulated or ground:
    220.10  Weighing not over 6 pounds per cubic foot uncompressed,
            except regranulated cork .............................3¢ per lb.

Claimed under:
  220.15  Other ...............................................1¢ per lb.
  Subpart A headnotes:
    1.  For the purposes of the tariff schedules—
        (a) the term *"cork"* embraces natural cork, compressed cork, and composition cork;

———◆———

3. The importer's witness testified:
  Q. What would be the density after 24 hours?
  A. Twenty-Four hours? I have more data on that. I have found on occasion that it is less than 6 pounds per cubic foot. I have found in some occasions that it remained somewhat over 6 pounds per cubic foot.
  Q. You don't have precise figures, do you?
  A. I have some. Referring to my chart here, in 24 hours, in this case, I have a figure of 5.9 pounds per cubic foot.
  Q. What would be the density after, say, 72 hours?
  A. Three days? About 5.8.

  Q. What would be the density after a week?
  A. About 5.6.
  Q. Can you explain this variation in densities?
  A. Yes. The cork is slowly recovering from its compressed condition.
  Q. In other words, it is expanding?
  A. Precisely.
  Q. It is becoming uncompressed?
  A. Decompressing further, yes.
  Q. I didn't hear you.
  A. Decompressing or uncompressing further. It is continuing.
  Similarly, a government witness testified that samples of loose granular cork received from the importer had a density of 4.5–5.3 lbs./cu.ft., determined in the

based on curve extrapolation that, after 30 years, the cork would reach essentially its original uncompressed density.

The basic factual and legal issue, of course, is whether the imported cork weighed over 6 pounds per cubic foot *un*compressed at the time of importation. Since it was compressed at the time of importation, the issue becomes how do we determine the equivalent uncompressed weight as of that time? In light of testimony concededly establishing the original density of the imported cork before baling and compression to be less than 6 lbs./cu.ft., at first blush it would seem incontrovertible that the imported merchandise is material "weighing not over 6 pounds per cubic foot uncompressed."[4] It does not seem likely that cork material originally weighing not over 6 lbs./cu.ft. uncompressed before importation could somehow weigh *over* 6 lbs./cu.ft. uncompressed at the time of or after importation, when all that was done to it in the interim aside from shipment was simply to compact it without apparent addition of extraneous particles, impurities or other material such as moisture.

Nevertheless, the importer maintains that its cork does weigh over 6 lbs./cu. ft. uncompressed at the time of importation. It does so by assigning a significance to the word "uncompressed" different from its common meaning, evidenced by the dictionary definitions, *supra*, and adopted by the court below. It variously argues that the imported cork becomes "uncompressed" (1) immediately

on removing the wire and burlap restraints from the bale, or (2) at the very least, at the time of breaking the coalesced cork comprising the bale into small pieces shortly before weighing. In support of its argument, the importer points to testimony of a cork industry representative before the Tariff Commission that, upon opening the bale, granulated cork "immediately becomes uncompressed."[5] Appellant further urges:

> The Tariff Commission was thus apprised that upon opening the bale the granulated cork "immediately becomes uncompressed" and is weighed in that form. In its report, the Tariff Commission noted that "the only practical criterion which can be used to determine which of these rate provisions should apply in a particular instance is the weight of the imported product" (Schedule 2, part 2, p. 47). By adopting the Tariff Commission's recommendation, the intent of Congress seems clear that the weight upon opening the bale, when the cork "immediately becomes uncompressed" should be the controlling factor.

The Customs Court did not agree with any of appellant's contentions, nor do we. In a thorough and well-considered opinion, the court examined the legislative history of item 220.10 and its predecessor (paragraph 1511 of the 1930 Tariff Act), found nothing to adequately suggest that Congress intended to use the term "uncompressed" appearing in both provisions in other than its com-

---

normal course of events more than a week after the bales were opened.

4. Webster's Third New International Dictionary, Unabridged (1963) defines "uncompressed" as "not compressed." "Compressed," in turn, is defined as "pressed together: compacted: reduced in volume by pressure * * *."

5. The witness stated (Tariff Classification Study—Schedule 2, November 15, 1960, pp. 203–204):

> Now, here is something that I didn't know until the other day. When this granulated cork is imported into the United States and we, my company,

have imported some a few years ago, it doesn't come in loose. Cork is very bulky. They compress it in a bale, wrap it in burlap or some kind of a covering, and it comes in compressed. It isn't composition. The particles have not been coalesced. They simply compress it to avoid the great bulk that presents a shipping problem.

> So when it arrives at the port, they open the bale and it immediately becomes uncompressed. They take it and they measure out a cubic foot to see what it weighs and it is in the uncompressed form that they measure it.

mon meaning, and concluded—correctly, we think—that:

> \* \* \* cork is "uncompressed" within the meaning of item 220.10 only after the effect of preimportation compression has been completely undone or neutralized, and the cork has returned to its original precompressed density. \* \* \*

With respect to appellant's argument predicated on the testimony of the industry witness before the Tariff Commission, the court stated:

> \* \* \* this argument, which is premised on the foregoing quoted statement of the industry witness before the Tariff Commission, presents several difficulties. First, there is no evidence whatever to indicate that the Tariff Commission relied on or even considered that statement at the time the provisions involved here were apopted. The explanatory notes, the *Tariff Classification Study,* and the *Submitting Report* make no reference to the statement and in fact, are completely devoid of any treatment with respect thereto. See e. g., Rice & Co. Corp. v. United States, 7 Cust.Ct. 109, 110–11, C.D. 547 (1941). Further (as pointed out previously), there is no suggestion in these notes and reports, or in the legislative history of the predecessor paragraph 1511 of the 1930 act that the term "uncompressed" was to be construed in other than its common meaning. Moreover, the statement would seem clearly to be based on misinformation, inconsistent as it is with the facts shown by the record that when a bale is opened, the cork does not expand at all but rather is in a very hard, tough condition. Finally, for the reasons pointed out, the statement would have the consequence for all practical purposes of nullifying item 220.10. In view of these considerations, it would be highly inappropriate here to look to the statement as an aid in the construction of that item.

We find no error in those conclusions. Nor can we adopt appellant's theory that the imported cork, weighed within 20 minutes of breaking the restraints on the bale and separating the particles into a granular state, was then "uncompressed" within the purview of item 220.10. It is evident from the record heretofore summarized that, when weighed by appellant's witness, the cork particles were still reduced in volume by the pre-importation pressure, and were still in a "compressed" condition, having undergone only partial expansion and decrease in density. We cannot regard such partially compressed particles as being "uncompressed" within the meaning of item 220.10.

The judgment is affirmed.

Affirmed.